UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT ABERNATHY,

          Plaintiff,

v.

VALLEY MEDICAL CENTER,

          Defendant.

No. C06-001MJP

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion for Summary Judgment. Defendant argues that Plaintiff's claims for discrimination must be dismissed because he cannot make a prima facie case of discrimination. Having considered all relevant papers and pleadings, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's discrimination claims. The Court also DENIES Plaintiff's request to grant summary judgment in his favor on the issue of liability.

## BACKGROUND

Plaintiff Abernathy is deaf. He uses American Sign Language (ASL) as his primary method of communication. On January 2, 2005, Mr. Abernathy went to the emergency department of Valley Medical Center ("VMC') after complaining of severe abdominal pain. At the emergency room, he asked for an interpreter to enable him to communicate his medical condition to the healthcare provider.

VMC does not have an in-house interpreter for sign language. Instead, VMC routinely relies on interpreter agencies to provide them with interpreters whenever needed. According to Mr.

ORDER ON
SUMM JMT - 1

Abernathy, he had to wait three to four hours for an interpreter to arrive. The interpreter was available throughout the emergency examination. The emergency physician Dr. Milne who first examined Mr. Abernathy consulted with the surgical consultant Dr. Claudio Alperovich about Mr. Abernathy's medical condition. Dr. Alpervoich examined Mr. Abernathy and suggested he might need surgery due to a possible abdominal abscess. Mr. Abernathy was admitted for more testing and overnight observation and possible surgery the next day. The interpreter was available throughout the consultation with Dr. Alpervoich, but left after Mr. Abernathy was admitted.

The following morning (January 3, 2005), Mr. Abernathy claims that he was not provided with an interpreter. However, VMC claims that they contacted International Language Services, Inc. ("ILS, Inc.,"), and were told that an interpreter would be provided; according to VMC, the interpreting agency did not state any particular time when the interpreter would be available. VMC claims that as they waited for an interpreter to arrive, the staff used other alternative means of communication with Mr. Abernathy.  For example, VMC alleges that they tried to communicate with Mr. Abernathy using notes and a TTY telephone (that allows text messages to be sent /translated over the phone). Communication was also attempted through two other individuals who knew sign language: a VMC employee (Ms. Jennifer Lutz) and Mr. Abernathy's friend (Mrs. Cindy Wilson) who came with him. However, Mr. Abernathy refused the alterative methods of communication and demanded a qualified interpreter. The nurses and staff  who dealt with Mr. Abernathy claimed that he was rude, abusive, unusually challenging, belligerent, and uncooperative.

According to Mr. Abernathy, on January 2, 2005, the nurse in charge at VMC called ILS, Inc., and cancelled the request for an interpreter. Since there was an interpreter available for Mr. Abernathy on the January 2, 2005, the Court can only assume that the cancellation was for the following day (January 3, 2005). Mr. Abernathy alleges that the hospital cancelled the request because it wanted to use one of its own staff (Ms. Jennifer Lutz) as an interpreter.

**ORDER ON
SUMM JMT - 2**

Mr. Abernathy states that he decided to check himself out of VMC on January 3, 2005 because he felt frustrated, ignored and unsafe. He checked himself into Virginia Mason hospital that same day, and was provided with an interpreter and operated on.

Mr. Abernathy is now suing Valley Medical Center for failing to provide him with a qualified interpreter. Plaintiff is seeking damages under the Americans With Disabilities Act (ADA) and the Washington Law Against Discrimination (WLAD). VMC has moved for summary judgment dismissal, arguing that Mr. Abernathy cannot make a prima facie case for the discrimination claim. VMC also argues that Mr. Abernathy was reasonably accommodated when they provided him with other alternative means of communication.

In his opposition brief, Mr. Abernathy has also requested that the Court grant summary judgment in his favor on the issue of liability. However, the Court denies Mr. Abernathy's request because he has not filed a properly noted motion for summary judgment in accordance with Local Civil Rule 7(d).

**ANALYSIS**

**A. Legal Standard for Summary Judgment**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.P.56(c). A "genuine issue" exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. A mere "scintilla" of evidence is not enough to defeat summary judgment. Instead, there must be evidence upon which a jury could reasonably find in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).

A fact is "material" if it hinges on the substantive law at issue and if it may affect the outcome of the case. Id. at 248. The moving party must first make a prima facie showing that summary judgment is appropriate under Rule 56. The moving party can meet its burden by pointing out the

ORDER ON
SUMM JMT - 3

absence of evidence of a genuine issue of material fact. <u>Musick v. Burke</u>, 913 F.2d 1390, 1394 (9th Cir. 1990). When the moving party meets its burden, the burden then shifts to the non-moving party to show by affidavit or otherwise that a genuine issue of material fact exists. <u>Matsushita Elec. Indus. Co.v. Zenith Radio Corp.</u>, 475 U.S. 574 586 (1986). The evidence of the non-moving party will be believed as true, all doubts will be resolved in favor of the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. <u>Hunt v. Cromartie</u>, 526 U.S. 541, 550-55 (1999).

**B. Discrimination Claim Under the Americans With Disabilities Act (ADA) and the Washington Law Against Discrimination (WLAD)**

The ADA statute (42 U.S.C § 12132) is analogous to the WLAD statute (RCW 49.060.215), which makes it an unlawful practice for a public entity to discriminate against any individual with respect to his or her disability. Washington law also requires a disabled person to show that he or she was discriminated against by not receiving services comparable to those provided to non-disabled person by or at the place of public accommodation. <u>Fell v. Spokane Transit Auth.</u>, 128 Wn.2d 618, 637 (1996).

First, Mr. Abernathy claims that he was discriminated against by VMC because of his disability. To make a prima facie case of discrimination under both the ADA and WLAD, Mr. Abernathy must show that: (1) he is qualified individual with a disability; (2) he was either excluded from participation or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. <u>Weinreich v. Los Angeles County Metropolitan Trans. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997) (ADA); <u>Fell</u>,128 Wn.2d at 637 (WLAD). Under Washington law, Mr. Abernathy must also show that the services he received from VMC were not comparable to those offered to non-disabled persons. <u>Fell</u>, 128 Wn.2d at 637.

ORDER ON
SUMM JMT - 4

It is undisputed that Mr. Abernathy is a qualified individual with a disability since he is deaf and uses sign language as his primary method of communication. 42 U.S.C § 12131(2) and 42 U.S.C § 12102 (2)(A) (defining disability). It is also undisputed that VMC is a public entity under 42 U.S.C § 12131(1)(B) and RCW 49.60.040(10).

Mr. Abernathy has presented issues of material fact to show that his disability could have caused him to receive non-comparable services while at VMC. Under the ADA regulations, a public entity which employs fifty or more employees must designate at least one employee to coordinate its efforts to comply with the ADA requirements. 28 C.F.R. § 35.107. In addition, 28 C.F.R §35.160 provides that the "public entity shall take appropriate steps to ensure that communications with...members of the public with disabilities are as effective as communications with others." Mr. Abernathy claims that VMC did not comply with the ADA regulation because they failed to designate at least one employee to coordinate the efforts of acquiring an interpreter for him. VMC has not responded to this claim. The claim that VMC failed to designate one of their employees to coordinate the needs of Mr. Abernathy as required by the ADA rules raises an issue of material fact sufficient to deny a summary judgment motion.

VMC contends that the ADA regulations do not require a place of public accommodation to "provide any services to disabled customers that are outside of their regular services." 28 C.F.R.§ 36.307. However, VMC's interpretation of the regulation is incorrect. First, the regulation states that a public accommodation does not need to alter its inventory to include accessible or special goods. Id. In this case, Mr. Abernathy was not asking the hospital to alter its inventory to provide him with a "special good." He was asking for a service that the hospital by its own admission provides by "routinely" relying on interpreter service agencies. (See Defendant's Motion at 2). Therefore, Mr. Abernathy's request for an interpreter would not have required VMC to go "outside their regular services." Second, Valley Medical Center has a duty under the law to ensure effective communication with persons with disabilities. 28 C.F.R §35.160. There is an issue of material fact as to whether VMC

ORDER ON
SUMM JMT - 5

abdicated its duty. Plaintiff has offered evidence that VMC called the ILS, Inc., and cancelled the request for an interpreter without obtaining his consent. (See Munger's Decl., attached to Dkt. No. 23)

Second, Mr. Abernathy contends that he was not treated comparably to others. In the instant case, a similarly situated non-disabled person would be able to explain to the healthcare provider his or her medical condition in a language they know and understand. Mr. Abernathy has raised issues of material fact as to whether the denial of a qualified interpreter prevented him from expressing his medical condition in a language he knows and understands. VMC argues that it provided Mr. Abernathy with comparable services when they communicated to him using notes. In addition, they argue that they provided Mr. Abernathy with a nurse trained to communicate in sign language. However, the Court is not prepared to say as a matter of law that communicating using notes and through non-certified interpreters is a comparable means of providing services to a person whose primary means of communication is sign language. In addition, the means by which VMC tried to provide Mr. Abernathy with medical services could be construed as both "intentional discrimination and simple exclusion from services resulting...from inaction, thoughtlessness," which could have been avoided had there been a qualified interpreter. McGary v. City of Portland, 386 F.3d 1259, 1267 (9th Cir. 2004).

**C. Reasonable Accommodation.**

It is disputed as to whether VMC provided reasonable accommodation to Mr. Abernathy. The question of what constitutes a reasonable accommodation under the ADA "requires a fact-specific, individualized analysis of the disabled individual's circumstance and the accommodation that might allow him to meet the program's standards." Wong v.Regents of Univ. of Cal., 192 F.3d 807, 818 (9th Cir. 1999). Under Washington law, the reasonableness of an accommodation is determined by (1) the cost of making accommodation; (2) the size of the public entity; (3) staff to make accommodation

ORDER ON
SUMM JMT - 6

available; (4) the importance of the service to the disabled person; and (5) any other factors bearing on a particular situation. WAC § 162-26-80(2).

VMC argues that Mr. Abernathy was reasonably accommodated according to his medical condition. The hospital claims four times in its motion that Mr. Abernathy's condition was <u>not</u> a medical emergency. However, reasonable accommodation does not depend on the patient's emergency condition, but on the five factors listed under the WAC. <u>Id.</u>  Furthermore, the claim that the condition was not an emergency could raise questions of its own. For example, how could a healthcare provider determine the emergency condition of a deaf person without his or her interpreter? Mr. Abernathy was diagnosed with abdominal abscess, an internal medical problem. Its emergency or non-emergency nature could only be ascertained by a patient's explanation or by screams of agony. Although Mr. Abernathy was not screaming in agony, he alleges that he was experiencing severe pain which could not be visibly observed by the nurses. In his declaration, Mr. Abernathy states, "the staff did not understand how much pain I was in, there was NOT good communication going on." (<u>See</u> Abernathy's Decl., at ¶ 5).

VMC also argues that the written notes they exchanged with Mr. Abernathy constitute reasonable accommodation. However, the court in <u>Duff v. Riveland</u>, 98 F.3d 447 (9th Cir. 1996) stated that written materials are not always sufficient. The court established three factors to consider in determining whether an interpreter is required instead of written notes: (1) the context in which the communication is taking place, (2) the number of people involved, and (3) the importance of communication. <u>Id.</u> at 456.

First, the use of notes in a medical emergency context could be ineffective. In any medical situation effective communication is essential in order to provide patients with quality medical services. Poor communication could lead to severe consequences for the patient. It is undisputed that Mr. Abernathy uses sign language as his primary method of communication; to ask him to use notes could have hindered his ability to express his medical condition. In addition, the medical terminology

ORDER ON
SUMM JMT - 7

commonly used in the medical profession could make it very hard for Mr. Abernathy to understand what was being asked of him using notes.

Second, the number of people that were involved could have favored the use of an interpreter over exchanging notes. Mr. Abernathy was seen by three nurses and one doctor. (<u>See</u> Nurse Rosaria Castro, R.N, Decl., Nurse Debra Henniger, R.N, Decl., Nurse Kathleen Swanson, R.N.C, Decl., and Dr. Claudio G. Alperovich, MD, Ex. B attached to Defendant's motion). Mr. Abernathy may not have been able to effectively communicate with each nurse using notes (which is not his primary method of communication) to express his medical concerns.

Third, the communication in this case was very important. Mr. Abernathy had to make medical decisions about his life after being informed that he might be operated on the next day. Making a medical decision requires a clear understanding of all the information pertaining to the medical treatment and an appreciation of the consequences of a choice one makes. Mr. Abernathy argues that he needed an interpreter to help him make this important decision. To ask him to use notes to make an important medical decision would arguably be to treat him like an object of manipulation, which goes against the purpose of ADA. (<u>See</u> <u>Fortyune v. Am.Multi-Cinema, Inc.</u>, 346 F.3d 1075,1086 (9th Cir.2004) (reasonable accommodation requirement is to guard against the facade of "equal treatment" when particular accommodation is necessary to level the playing field).

Finally, VMC contends that it provided Mr. Abernathy with reasonable accommodation because they provided him with a nurse (Ms. Jennifer Lutz) who was trained to interpret sign language. They also argue that Mr. Abernathy's friend he came with to the hospital knew sign language and would have been able to act as an interpreter. Mr. Abernathy refused to use the nurse or his friend because they were not qualified. According to Mr. Abernathy, Ms. Lutz was not fluent in sign language and Ms. Wilson only "knows the alphabet." (<u>See</u> Abernathy's Decl., at 5 ¶ 2 and 3). Although not every sign language interpreter must be formally certified ( <u>Duff v. Riveland</u>, 98 F.3d at 456), VMC has not provided any evidence to show that Ms. Lutz was qualified either formally or

ORDER ON
SUMM JMT - 8

informally as sign language interpreter. According to Mr. Abernathy, she was not. (See Abernathy's Decl., at 5 ¶ 1). After all, "accommodating deaf person requires a special skill–the ability to converse in sign language not possessed by the ordinary person." Memmer v. Marin County Courts, 169 F.3d 630, 634 (9th Cir. 1999).

### CONCLUSION

As discussed above, Mr. Abernathy has presented evidence sufficient to defeat Defendant's motion for summary judgment on his discrimination claim against VMC. The Court hereby DENIES Defendant's motion for summary judgment. The Court also DENIES Plaintiff's request to grant summary judgment in his favor because Plaintiff failed to properly file his motion as required under Local Civil Rule 7(d).

The Clerk is directed to send copies of this order to all counsel of record.

Date: May 25, 2006

Marsha J. Pechman
U.S. District Judge

**ORDER ON
SUMM JMT - 9**